**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**BETTERNOI, LLC,**
**A Florida limited liability company,**

**Plaintiff,**

**Case No.**

**v.**

**STAVROS ALOIZOS, CHRISTOS ALOIZOS, DIEGO BENITEZ, JUAN CAMILO LLANOS TORO, JEFFREY WAHL, JUSTIN BURKE, ASHUTOSH GAJANKUSH, MANDAR PATIL, individuals, and JOHN DOES 1-25,**

**Defendants.**
_________________________________/

**BETTERNOI LLC'S COMPLAINT FOR DAMAGES,**
**INJUNCTIVE RELIEF, AND JURY TRIAL**

Plaintiff, BetterNOI, LLC, a Florida limited liability company ("BNOI"), by and through the undersigned counsel sues Defendants, Stavros Aloizos ("S.Aloizos"), Christos Aloizos ("C.Aloizos"), Diego Benitez ("Benitez"), Juan Camilo Llanos Toro ("Toro"), Jeffrey Wahl ("Wahl"), Justin Burke ("Burke"), Ashutosh Gajankush ("Gajankush"), Mandar Patil ("Patil"), individuals, and John Does 1-25, yet unidentified individuals, hereinafter the "Defendants," and alleges:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is a limited liability company, formed and organized under the laws of the State of Florida, with a principal place of business at 2900 Monarch Lakes Blvd., Suite 201, Miramar, Florida.

2. Defendant Stavro Aloizos is an individual residing 7400 SW 66th Street, Southwest

Ranches, Broward County, Florida, 33331, and at all relevant times was the Chief Technology Officer of BNOI.

3. Defendant Christos Aloizos is an individual residing at 7400 SW 66th Street, Southwest Ranches, Broward County, Florida, 33331, and at all relevant times was an employee of BNOI.

4. Defendant Diego Benitez is an individual residing at 10669 SW 8th Street, Pembroke Pines, Broward County, Florida, 33025, and at all relevant times was an employee of BNOI.

5. Defendant Juan Camilo Llanos Toro is an individual residing at 7521 Harbour Boulevard, Miramar, Broward County, Florida, 33023, and at all relevant times was an employee of BNOI.

6. Defendant Jeffrey Wahl is an individual residing at 54 Homestead Drive, Carmel, Putnam County, New York, 10512, and at all relevant times was an employee of BNOI.

7. Defendant Ashutosh Gajankush is an individual residing in 2000 Metropica Way Apt. #1608, Sunrise, Broward County, Florida, 33323 and at all relevant times was an employee of BNOI.

8. Defendant Mandar Patil is an individual residing in a 11575 City Hall Promenade 4-357, Miramar, Broward County, Florida, 33025 and at all relevant times was an employee of BNOI.

9. Defendant Justin Burke is an individual residing at 24 Deshon Ave., Bronxville, Westchester County, New York 10708, and at all relevant times was an employee of BNOI.

10. The true names and capacities, whether individual, corporate, associate, governmental, or otherwise, of Defendants John Does ("Does") 1 through 25 are unknown to

Plaintiff at this time, who therefore sues said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this Complaint accordingly. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated herein as a Doe is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused damages thereby to the Plaintiff, as hereinafter alleged.

11. At all times herein mentioned, each of the Defendants was the agent, servant, employee, and/or joint venturer of his/her/its Co-Defendants, and each of them, and at all said times, each Defendant was acting in the course and scope of said agency, service, employment and/or joint venture. Any reference hereafter to "Defendants" without further qualification is meant by Plaintiff to refer to each Defendant, and all of them, named above.

12. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants Does 1-25, inclusive, were and are individuals, corporations, partnerships, unincorporated associations, sole proprietorships, and/or other business entities organized and existing under and by virtue of the laws of the State of Florida, or the laws of some other state or foreign jurisdiction.

13. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the case arises, in part, under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*., and under the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 USC § 1961 *et seq*.

14. The Court has supplemental jurisdiction over the state law claims in this action under 28 U.S.C § 1367 because the claims are so closely related to the DTSA and RICO claims that they are a part of the same case and controversy.

15. The Court has personal jurisdiction over the Defendants because they have sufficient minimum contacts with this forum. The actions described in this Complaint occurred during the Defendants' scope of employment with BNOI and occurred in Broward County, Florida.

16. Venue is proper is this District pursuant to 28 U.S.C. § 1391 because this lawsuit arises out events in and impacting Miramar, Broward County, Florida, with the key witnesses and documents located in the Southern District of Florida. In addition, some, or all, of the Confidential Information and Trade Secrets at issue have their situs in the Southern District of Florida, where BNOI's principal place of business is located.

## <u>FACTUAL ALLEGATIONS</u>

### BNOI'S BUSINESS

17. BNOI operates a multi-tiered business which helps owners and operators of residential multifamily properties located throughout the U.S. achieve better net operating income (NOI) for their properties and portfolios.

18. BNOI's platform provides the tools and data which enables owners and operators to better run their business.

19. Among the services that BNOI provides to multifamily property owners and operators is the development and management of web sites for the marketing and management of their properties.

20. BNOI is also in the business of developing and maintaining software for third party companies such as Impact Receivables Management, LLC ("Impact") which BNOI charges on an hourly fee basis.

21. BNOI's customers rely on BNOI to help achieve a better net operating income for their property portfolios.

22. To ensure continuous support of its customers, BNOI relies on its web-based platforms to provide unparalleled services.

23. BNOI has invested millions and continues to substantially invest in building and maintaining these web-based platforms.

24. To achieve this success, BNOI made substantial investment in recruiting and building out its engineering team.

25. In April, 2019, BNOI brought on S.Aloizos as its Chief Technology Officer. Relying on his decades of experience and entrusting that he would continue to grow and take BNOI to the next level.

26. Unfortunately, in November of 2024, BNOI learned that S.Aloizos had colluded with other individuals and engaged in a scheme to steal BNOI's intellectual property in order to develop and build an online pornography business.

27. Shortly after, BNOI learned that S.Aloizos recruited his entire BNOI engineering team comprised of Defendants Christos Aloizos, Diego Benitez, Juan Camilo Llanos Toro, Jeffrey Wahl, Justin Burke, Ashutosh Gajankush, and Mandar Patil, to assist in his scheme.

28. S.Aloizos and his engineering team continue to use BNOI's confintial information, trade secret, employee developments and intellectual property to operate the online pornography business. Specifically, S.Aloizos and his engineering team are using BNOI's proprietary software to build pornographic websites for their personal financial benefit. Further, S.Aloizos and his engineering team are utilizing their programming expertise falsify traffic usage for the pornographic websites they are constructing to fraudulently induce the advertisers on those

websites to pay higher fees than they would otherwise owe if true website traffic was to be reported.

## THE DEFENDANTS' EMPLOYMENT AGREEMENTS

***S.Aloizos – Chief Technology Officer***

29. On or around April 15, 2019, S.Aloizos was hired as the Chief Technology Officer ("CTO") for BNOI.

30. S.Aloizos' job duties were to lead all aspects of BNOI's technology and the engineering team.

31. As CTO of BNOI, he was responsible for ensuring that BNOI's web platform optimally functioned on a daily basis, providing BNOI's customers with superior service.

32. As a condition of his employment S. Aloizos agreed to and executed BNOI's Offer Letter ("Letter").

33. The Letter required S. Aloizos' agreement to be bound by the terms and conditions contained in "Schedule A – BetterNOI Terms and Conditions of Employment" ("Terms and Conditions").

34. The Letter and the Terms and Conditions required agreement to be bound by "Schedule B – BetterNOI Company Confidentiality, Non-Competition and Work Product Development Agreement" ("Confidentiality Agreement").

35. Together the Letter, Terms and Conditions and Confidentiality Agreement are referred to as the "Employment Contract." A true and accurate copy is attached hereto as Exhibit A and by reference made a part hereof.

36. S.Aloizos executed the Employment Contract thereby agreeing to be bound by all of the terms set forth therein. Exhibit A at p.1, 8.

37. S.Aloizos' employment was on a full-time basis Monday-Friday 8 a.m. to 5 p.m. *Id*.

38. The Terms and Conditions required that S.Aloizos would not engage in any other business that interfered or could reasonably interfere with his duties to BNOI without BNOI's prior written consent. *Id*.

39. The Terms and Conditions require the return of all BNOI property, including all confidential information, files, material, and property or equipment in the event of termination or resignation. *Id*.

40. The Confidentiality Agreement contains Employee Covenants ("Covenants"). *Id*. at p. 3 ¶ 3.

41. The Covenants require the protection of confidential information not generally available to the public, including but not limited to materials, records, data and information regarding BNOI ("Confidential Information"). *Id*. at p. 3 ¶ 3.1.

42. The Covenants also require the protection of information relating to BNOI's proprietary computer programs, databases, and technologies that are deemed trade secret ("Trade Secret"). *Id*. at p. 4 ¶ 3.2.

43. The Covenants further require that S.Aloizos assign to BNOI any intellectual property, technology or other idea, process and material, research product, invention, improvement, discovery, article or other writing, drawing, or software developed during his scope of employment ("Employee Developments"). *Id*. at p. 5 ¶ 3.5.

44. In the event of a breach, the Covenants permit BNOI to seek any and all legal and equitable remedies. *Id*. p. 6 at ¶ 4.

***Benitez – Senior Software Engineer***

45. On or around April 15, 2019, Benitez was hired as the Senior Software Engineer at BNOI.

46. Benetiz' job duties included engineering and data architecture oversight, including but not limited to network topology review and configurations, responsible for creating and maintaining complex features and databases of BNOI's platforms.

47. As a condition of his employment Benitez agreed to and executed BNOI's Offer Letter ("Letter").

48. The Letter required agreement to be bound by the terms and conditions contained in "Schedule A – BetterNOI Terms and Conditions of Employment" ("Terms and Conditions").

49. The Letter and the Terms and Conditions required agreement to be bound by "Schedule B- BetterNOI Company Confidentiality, Non-Competition and Work Product Development Agreement" ("Confidentiality Agreement").

50. Together the Letter, Terms and Conditions and Confidentiality Agreement are referred to as the "Employment Contract". A true and accurate copy is attached hereto as Exhibit B and by reference made a part hereof.

51. Benitez executed the Employment Contract thereby agreeing to be bound by all of the terms set forth therein. Exhibit B at p. 1, 8.

52. Benitez' employment was on a full-time basis. *Id*.

53. The Terms and Conditions required that Benitez would not engage in any other business that interfered or could reasonably interfere with his duties to BNOI without BNOI's prior written consent. *Id*.

54. The Terms and Conditions require the return of all BNOI property, including all confidential information, files, material, and property or equipment in the event of termination or resignation. *Id*.

55. The Confidentiality Agreement contains Employee Covenants ("Covenants"). *Id*. at p. 4 ¶ 3.

56. The Covenants require the protection of confidential information not generally available to the public, including but not limited to materials, records, data and information regarding BNOI ("Confidential Information"). *Id*. at p. 4 ¶ 3.1.

57. The Covenants also require the protection of information relating to BNOI's proprietary computer programs, databases, and technologies that are deemed trade secret ("Trade Secret"). *Id*. at p. 5 ¶ 3.2.

58. The Covenants further require that Benitez assign to BNOI any intellectual property, technology or other idea, process and material, research product, invention, improvement, discovery, article or other writing, drawing, or software developed during his scope of employment ("Employee Developments"). *Id*. at p. 6 ¶ 3.5.

59. In the event of a breach, the Covenants permit BNOI to seek any and all legal and equitable remedies. *Id*. p. 7 at ¶ 4.

***Burke – Senior UI/UX Software Engineer***

60. On or around April 15, 2019, Burke was hired as the Senior UI/UX Software Engineer at BNOI.

61. Burke's job duties were to develop user interfaces and workflows in which a user can easily and efficiently work, using various front-end development tools. Burke was also responsible for back-end development to supplement front-end and code/repository management.

62. As a condition of his employment Burke agreed to and executed BNOI's Offer Letter ("Letter").

63. The Letter required agreement to be bound by the terms and conditions contained in "Schedule A – BetterNOI Terms and Conditions of Employment" ("Terms and Conditions").

64. The Letter and the Terms and Conditions required agreement to be bound by "Schedule B- BetterNOI Company Confidentiality, Non-Competition and Work Product Development Agreement" ("Confidentiality Agreement").

65. Together the Letter, Terms and Conditions and Confidentiality Agreement are referred to as the "Employment Contract". A true and accurate copy is attached hereto as Exhibit C and by reference made a part hereof.

66. Burke executed the Employment Contract thereby agreeing to be bound by all of the terms set forth therein. Exhibit C at p. 1, 8.

67. Burke's employment was on a full-time basis.

68. The Terms and Conditions required that Burke would not engage in any other business that interfered or could reasonably interfere with his duties to BNOI without BNOI's prior written consent. *Id*.

69. The Terms and Conditions require the return of all BNOI property, including all confidential information, files, material, and property or equipment in the event of termination or resignation. *Id*.

70. The Confidentiality Agreement contains Employee Covenants ("Covenants"). *Id.* at p. 4 ¶ 3.

71. The Covenants require the protection of confidential information not generally available to the public, including but not limited to materials, records, data and information regarding BNOI ("Confidential Information"). *Id.* at p. 4 ¶ 3.1

72. The Covenants also require the protection of information relating to BNOI's proprietary computer programs, databases, and technologies that are deemed trade secret ("Trade Secret"). *Id.* at p. 5 ¶ 3.2.

73. The Covenants further require that Burke assign to BNOI any intellectual property, technology or other idea, process and material, research product, invention, improvement, discovery, article or other writing, drawing, or software developed during his scope of employment ("Employee Developments"). *Id.* at p. 6 ¶ 3.5.

74. In the event of a breach, the Covenants permit BNOI to seek any and all legal and equitable remedies. *Id.* p. 7 at ¶ 4.

***Wahl – Senior Data Capture & Integration Engineer***

75. On or around April 15, 2019, Wahl was hired as the Senior Data Capture & Integration Engineer at BNOI.

76. Wahl's job duties included coding solutions to business requirements with respect to the acquisition of data and its integration into the BNOI platforms. Wahl was also responsible for implementing and designing additional functionality in the platform and implementing and maintaining the BNOI Data Lakw and its requirements.

77. As a condition of his employment Wahl agreed to and executed BNOI's Offer Letter ("Letter").

78. The Letter required agreement to be bound by the terms and conditions contained in "Schedule A – BetterNOI Terms and Conditions of Employment" ("Terms and Conditions").

79. The Letter and the Terms and Conditions required agreement to be bound by "Schedule B- BetterNOI Company Confidentiality, Non-Competition and Work Product Development Agreement" ("Confidentiality Agreement").

80. Together the Letter, Terms and Conditions and Confidentiality Agreement are referred to as the "Employment Contract". A true and accurate copy is attached hereto as Exhibit D and by reference made a part hereof.

81. Wahl executed and agreed to be bound by the Employment Contract. Exhibit D at p.1, 8.

82. Wahl's employment was on a full-time basis Monday-Friday

83. The Terms and Conditions required that Wahl would not engage in any other business that interfered or could reasonably interfere with his duties to BNOI without BNOI's prior written consent. *Id.*

84. The Terms and Conditions require the return of all BNOI property, including all confidential information, files, material, and property or equipment in the event of termination or resignation. *Id.*

85. The Confidentiality Agreement contains Employee Covenants ("Covenants"). *Id.* at p. 4 ¶ 3.

86. The Covenants require the protection of confidential information not generally available to the public, including but not limited to materials, records, data and information regarding BNOI ("Confidential Information"). *Id.* at p. 4 ¶ 3.1.

87. The Covenants also require the protection of information relating to BNOI's proprietary computer programs, databases, and technologies that are deemed trade secret ("Trade Secret"). *Id*. at p. 5 ¶ 3.2.

88. The Covenants further require that Wahl assign to BNOI any intellectual property, technology or other idea, process and material, research product, invention, improvement, discovery, article or other writing, drawing, or software developed during his scope of employment ("Employee Developments"). *Id*. at p. 6 ¶ 3.5.

89. In the event of a breach, the Covenants permit BNOI to seek any and all legal and equitable remedies. *Id*. p. 7 at ¶ 4.

***Toro – Mid-level Software and Mobile Environments Engineer***

90. On or around April 15, 2019, Toro was hired as a Mid-level Software and Mobile Environments Engineer at BNOI.

91. Toro's job duties included gathering information and understanding the business process to assist in creating software for the server, desktop and mobile applications using guidelines to ensure the efficiency of BNOI's business processes.

92. As a condition of his employment Toro agreed to and executed BNOI's Offer Letter ("Letter").

93. The Letter required Toro's agreement to be bound by the terms and conditions contained in "Schedule A – BetterNOI Terms and Conditions of Employment" ("Terms and Conditions").

94. The Letter and the Terms and Conditions required agreement to be bound by "Schedule B- BetterNOI Company Confidentiality, Non-Competition and Work Product Development Agreement" ("Confidentiality Agreement").

95. Together the Letter, Terms and Conditions and Confidentiality Agreement are referred to as the "Employment Contract". A true and accurate copy is attached hereto as Exhibit E and by reference made a part hereof.

96. Toro executed and agreed to be bound by the Employment Contract. Exhibit E at p. 1, 8.

97. Toro's employment was on a full-time basis Monday-Friday.

98. The Terms and Conditions required that Toro would not engage in any other business that interfered or could reasonably interfere with his duties to BNOI without BNOI's prior written consent. *Id.*

99. The Terms and Conditions require the return of all BNOI property, including all confidential information, files, material, and property or equipment in the event of termination or resignation. *Id.*

100. The Confidentiality Agreement contains Employee Covenants ("Covenants"). *Id.* at p. 4 ¶ 3.

101. The Covenants require the protection of confidential information not generally available to the public, including but not limited to materials, records, data and information regarding BNOI ("Confidential Information"). *Id.* at p. 4 ¶ 3.1.

102. The Covenants also require the protection of information relating to BNOI's proprietary computer programs, databases, and technologies that are deemed trade secret ("Trade Secret"). *Id.* at p. 5 ¶ 3.2.

103. The Covenants further require that Toro assign to BNOI any intellectual property, technology or other idea, process and material, research product, invention, improvement,

discovery, article or other writing, drawing, or software developed during his scope of employment ("Employee Developments"). *Id*. at p. 6 ¶ 3.5.

104. In the event of a breach, the Covenants permit BNOI to seek any and all legal and equitable remedies. *Id*. p. 7 at ¶ 4.

***Gajankush – Mid-Level Software and Data Integration Engineer***

105. On or around April 15, 2019, Gajankush was hired as a Mid-Level Software and Data Integration Engineer at BNOI.

106. Gajankush's job duties included gathering information and understanding the business process to assist in creating software for the server, desktop and mobile applications using guidelines to ensure the efficiency of BNOI's business processes.

107. As a condition of his employment Gajankush agreed to and executed BNOI's Offer Letter ("Letter").

108. The Letter required Gajankush's agreement to be bound by the terms and conditions contained in "Schedule A – BetterNOI Terms and Conditions of Employment" ("Terms and Conditions").

109. The Letter and the Terms and Conditions required agreement to be bound by "Schedule B- BetterNOI Company Confidentiality, Non-Competition and Work Product Development Agreement" ("Confidentiality Agreement").

110. Together the Letter, Terms and Conditions and Confidentiality Agreement are referred to as the "Employment Contract". A true and accurate copy is attached hereto as Exhibit F and by reference made a part hereof.

111. Gajankush executed and agreed to be bound by the Employment Contract. Exhibit F at p. 1, 8.

112. Gajankush's employment was on a full-time basis Monday-Friday

113. The Terms and Conditions required that Gajankush would not engage in any other business that interfered or could reasonably interfere with his duties to BNOI without BNOI's prior written consent. *Id*.

114. The Terms and Conditions require the return of all BNOI property, including all confidential information, files, material, and property or equipment in the event of termination or resignation. *Id*.

115. The Confidentiality Agreement contains Employee Covenants ("Covenants"). *Id*. at p. 4 ¶ 3.

116. The Covenants require the protection of confidential information not generally available to the public, including but not limited to materials, records, data and information regarding BNOI ("Confidential Information"). *Id*. at p. 4 ¶ 3.1.

117. The Covenants also require the protection of information relating to BNOI's proprietary computer programs, databases, and technologies that are deemed trade secret ("Trade Secret"). *Id*. at p. 5 ¶ 3.2.

118. The Covenants further require that Benitez assign to BNOI any intellectual property, technology or other idea, process and material, research product, invention, improvement, discovery, article or other writing, drawing, or software developed during his scope of employment ("Employee Developments"). *Id*. at p. 6 ¶ 3.5.

119. In the event of a breach, the Covenants permit BNOI to seek any and all legal and equitable remedies. *Id*. p. 7 at ¶ 4.

***C.Aloizos-Junior Software and Mobile Environments Engineer***

120. On or around April 15, 2019, C.Aloizos was hired as a Junior Software and Mobile Environments Engineer at BNOI.

121. C.Aloizos' job duties included gathering information and understanding the business process to assist in creating software for the server, desktop and mobile applications using guidelines to ensure the efficiency of BNOI's business processes.

122. As a condition of his employment C.Aloizos agreed to and executed BNOI's Offer Letter ("Letter").

123. The Letter required agreement to be bound by the terms and conditions contained in "Schedule A – BetterNOI Terms and Conditions of Employment" ("Terms and Conditions").

124. The Letter and Terms and Conditions required agreement to be bound by "Schedule B-BetterNOI Company Confidentiality, Non-Competition and Work Product Development Agreement" ("Confidentiality Agreement").

125. Together the Letter, Terms and Conditions and Confidentiality Agreement are referred to as the "Employment Contract". A true and accurate copy is attached hereto as Exhibit G and by reference made a part hereof.

126. C.Aloizos executed and agreed to be bound by the Employment Contract. Exhibit G at p. 1, 8.

127. C.Aloizos' employment was on a full-time basis Monday-Friday.

128. The Terms and Conditions required that C.Aloizos would not engage in any other business that interfered or could reasonably interfere with his duties to BNOI without BNOI's prior written consent. *Id*.

129. The Terms and Conditions require the return of all BNOI property, including all confidential information, files, material, and property or equipment in the event of termination or resignation. *Id*.

130. The Confidentiality Agreement contains Employee Covenants ("Covenants"). *Id*. at p. 4 ¶ 3.

131. The Covenants require the protection of confidential information not generally available to the public, including but not limited to materials, records, data and information regarding BNOI ("Confidential Information"). *Id*. at p. 4 ¶ 3.1.

132. The Covenants also require the protection of information relating to BNOI's proprietary computer programs, databases, and technologies that are deemed trade secret ("Trade Secret"). *Id*. at p. 5 ¶ 3.2.

133. The Covenants further require that Benitez assign to BNOI any intellectual property, technology or other idea, process and material, research product, invention, improvement, discovery, article or other writing, drawing, or software developed during his scope of employment ("Employee Developments"). *Id*. at p. 6 ¶ 3.5.

134. In the event of a breach, the Covenants permit BNOI to seek any and all legal and equitable remedies. *Id*. p. 7 at ¶ 4.

***Patil – Software Engineer***

135. On or around February 3, 2021, Patil was hired as Software Engineer at BNOI.

136. Patil's job duties included engineering and data architecture oversight, including but not limited to network topology review and configuration recommendations, creating and maintaining complex features and databases of BNOI's platforms. Server configurations and maintenance of a software stack.

137. As a condition of his employment Patil agreed to and executed BNOI's Offer Letter ("Letter").

138. The Letter required agreement to be bound by the terms and conditions contained in "Schedule A – BetterNOI Terms and Conditions of Employment" ("Terms and Conditions").

139. The Terms and Conditions required agreement to be bound by "Schedule B-BetterNOI Company Confidentiality, Non-Competition and Work Product Development Agreement" ("Confidentiality Agreement").

140. Together the Letter, Terms and Conditions and Confidentiality Agreement are referred to as the "Employment Contract". A true and accurate copy is attached hereto as Exhibit H and by reference made a part hereof.

141. Patil executed and agreed to be bound by the Employment Contract. Exhibit H at p. 1, 8.

142. Patil's employment was on a full-time basis Monday-Friday.

143. The Terms and Conditions required that Patil would not engage in any other business that interfered or could reasonably interfere with his duties to BNOI without BNOI's prior written consent. *Id*.

144. The Terms and Conditions require the return of all BNOI property, including all confidential information, files, material, and property or equipment in the event of termination or resignation. *Id*.

145. The Confidentiality Agreement contains Employee Covenants ("Covenants"). *Id*. at p. 4 ¶ 3.

146. The Covenants require the protection of confidential information not generally available to the public, including but not limited to materials, records, data and information regarding BNOI ("Confidential Information"). *Id*. at p. 4 ¶ 3.1.

147. The Covenants also require the protection of information relating to BNOI's proprietary computer programs, databases, and technologies that are deemed trade secret ("Trade Secret"). *Id*. at p. 5 ¶ 3.2.

148. The Covenants further require that Benitez assign to BNOI any intellectual property, technology or other idea, process and material, research product, invention, improvement, discovery, article or other writing, drawing, or software developed during his scope of employment ("Employee Developments"). *Id*. at p. 6 ¶ 3.5.

149. In the event of a breach, the Covenants permit BNOI to seek any and all legal and equitable remedies. *Id*. p. 7 at ¶ 4.

**BNOI PROTECTS ITS CONFIDENTIAL INFORMATON AND TRADE SECRETS**

150. Each of the Defendants were a part of the BNOI's engineering team, and were lead by and directly reported to S.Aloizos, as CTO.

151. As a part of their job duties and functions, the Defendants developed and enhanced existing technology for utilization in BNOI's proprietary program "BetterCMS Pro" and "Screening Report Criminal Record Collection Spiders" ("Code and Programs") which are necessary and vital to run BNOI's day to day business operations.

152. The Code and Programs developed by the Defendants are proprietary Confidential Information and Trade Secret as set forth in the Employment Agreement.

153. The Code and Programs developed by the Defendants were Employee Developments as set forth in the Employment Agreement.

154. The Code and Programs developed by the Defendants are the intellectual property of BNOI.

155. The intellectual property constitutes trade secret as set forth in Florida Statute § 812.081.

156. BNOI protects its investment in its Confidential Information and Trade Secrets, Employee Developments, and intellectual property by requiring employees to sign agreements pre- and post-employment agreements, such as the Employment Contracts, that contain obligations and restrictions upon hire. *See* Exs. A-H.

157. BNOI password protects its network, which is also protected by a firewall, and limits employees' access to confidential and proprietary information to that about which they have a business need to know.

158. All BNOI employees are subject to employee policies in the Employee Handbooks which require them to maintain and keep confidential BNOI's Confidential Information and Trade Secrets, Employee Developments, and intellectual property.

159. Despite these protections, the Defendants misappropriated BNOI's Confidential Information and Trade Secrets, Employee Developments, and intellectual property for their own personal financial gain by utilizing the Code and Programs to create templates for pornographic website providers and by utilizing the Code and Programs to increase traffic to the websites once created.

**DEFENDANTS THEFT OF BNOI'S CONFIDENTIAL INFORMATION, TRADE SECRET AND INTELLECTUAL PROPERTY**

160. On a date better known to the Defendants, S.Aloizos solicited the Defendants and his daughter Kyra Aloizos ("K.Aloizos"), a former employee of BNOI, to start an online pornography business.

161. The Defendants and K.Aloizos agreed to and began developing an online pornography business with S.Aloizos as the leader.

162. S.Aloizos schemed with the Defendants to develop the online pornography business whose principal purpose was to develop and operate pornography websites for adult film entertainers.

163. The Defendants utilized BNOI's Confidential Information and Trade Secrets to develop and build the pornography websites.

164. The Defendants utilized BNOI's proprietary code and programs to develop and build the pornography websites.

165. The Defendants utilized BNOI's trade secrets as defined by Florida Statute § 812.081, to develop and build the pornography websites.

166. BNOI did not authorize the Defendants to use its Confidential Information and Trade Secrets and proprietary code and programs to develop and build the pornography websites.

167. The Defendants utilized Employee Developments to develop and build their pornography websites.

168. The Defendants did not receive BNOI's written authorization to utilize BNOI's Employee Developments to develop and build their pornography websites.

169. BNOI did not authorize the use of Employee Developments to develop and build the Defendants' pornography websites.

170. BNOI did not consent to the use of Employee Developments to develop and build the Defendants' pornography websites.

171. The Defendants' scheme to develop and build the pornography websites occurred during BNOI's regular business hours.

172. BNOI did not authorize the Defendants to work on their pornography websites during BNOI's regular business hours.

173. The Defendants' unauthorized activities during business hours resulted in the Defendants failing to timely complete their assigned job duties at BNOI.

174. The Defendants' unauthorized activities during business hours resulted in the Defendants failing to timely complete work for Impact, and unbeknownst to BNOI lead to Impact being billed for services the Defendants did not render. Such that in addition to the losses described herein, BNOI incurred an additional monetary loss as it will be required to provide Impact with a discount or credit against amounts owed by Impact to BNOI.

175. The Defendants' unauthorized activities during business hours resulted in BNOI's business not being completed in a timely manner.

176. The Defendants' unauthorized activities during business hours caused BNOI to experience widespread outages of its web platform resulting in monetary losses to BNOI and its customers.

177. On December 11, 2024, BNOI's web platform experienced an outage lasting over two hours.

178. BNOI's engineering team failed to timely repair its web platform because the Defendants were working on the pornography business during BNOI's business hours.

179. BNOI suffered monetary losses due to the Defendants' failure to promptly address and repair the web platform.

180. The Defendants' failure to complete their work timely also resulted in failed projects.

181. On December 9, 2024, the Defendants failed to properly prepare for and complete a migration project due to the Defendants working on the pornography business during BNOI's business hours.

182. The Defendants' failure to complete their work correctly and in a timely manner caused BNOI's clients to lose confidence in BNOI's ability to complete contracted for services.

183. BNOI has suffered and continues to suffer irreparable harm due to the Defendants unauthorized use of BNOI Confidential Information and Trade Secret proprietary code.

## COUNT I
## BREACH OF CONTRACT AGAINST ALL DEFENDANTS

184. Plaintiff realleges and reincorporates by reference the allegations in Paragraphs 1 through 183, as though set forth fully herein.

***S.Aloizos' Employment Agreement***

185. As a condition of his employment, S.Aloizos agreed to and executed an Employment Agreement with BNOI. *See* Ex. A.

186. S.Aloizos' Employment Agreement is a valid, enforceable contract supported by adequate consideration which S.Aloizos voluntarily and knowingly entered into.

187. The Employment Agreement required that S.Aloizos would not engage in any business that interferes with his respective job duties to BNOI without prior written permission. *Id*.

188. The Employment Agreement also required that S.Aloizos protect BNOI's Confidential Information and Trade Secrets. *Id*.

189. The Employment Agreement further required that any Employee Developments, including but not limited to intellectual property developed by S.Aloizos during the course of his employment, belong to BNOI. *Id*.

190. These requirements in S.Aloizos' Employment Agreement are reasonably limited to protect BNOI's legitimate business interest in protecting its Confidential Information and Trade Secrets, Employee Developments, and intellectual property.

191. S.Aloizos materially breached his Employment Agreement when he organized the Defendants and orchestrated a scheme to develop and operate the online pornography business without BNOI's written permission. *Id*.

192. S.Aloizos materially breached his Employment Agreement when he failed to protect BNOI's Confidential Information and Trade Secret, by utilizing BNOI's proprietary code and programs to develop and operate the online pornography business. *Id*.

193. S.Aloizos materially breached his Employment Agreement when he worked to develop and operate the online pornography business during BNOI's work hours. *Id*.

194. As a direct and proximate result of S.Aloizos' knowing, willful, and intentional material breach of his Employment Agreement, BNOI suffered damages and continues to suffer damages.

195. BNOI retained the law firm of Messer Strickler Burnette, Ltd. to represent it in this action and obligated itself to pay its attorneys a reasonable fee for their services in this cause.

196. Pursuant to the Employment Agreement, BNOI is entitled to an award of its reasonable attorney's fees from S.Aloizos.

***Benitez' Employment Agreement***

197. As a condition of his employment, Benitez agreed to and executed an Employment Agreement with BNOI. *See* Ex. B.

198. Benitez' Employment Agreement is a valid, enforceable contract supported by adequate consideration which Benitez voluntarily and knowingly entered into.

199. The Employment Agreement required that Benitez would not engage in any business that interferes with his respective job duties to BNOI without prior written permission. *Id*.

200. The Employment Agreement also required that Benitez protect BNOI's Confidential Information and Trade Secrets. *Id*.

201. The Employment Agreement further required that any Employee Developments, including but not limited to intellectual property developed by Benitez during the course of his employment, belonged to BNOI. *Id*.

202. These requirements in Benitez' Employment Agreement are reasonably limited to protect BNOI's legitimate business interest in protecting its Confidential Information and Trade Secrets, Employee Developments, and intellectual property.

203. Benitez materially breached his Employment Agreement when he participated in the scheme to develop and operate the online pornography business without BNOI's written permission. *Id*.

204. Benitez materially breached his Employment Agreement when he failed to protect BNOI's Confidential Information and Trade Secret, by utilizing BNOI's proprietary code and programs to develop and operate the online pornography business. *Id*.

205. Benitez materially breached his Employment Agreement when he worked to develop and operate the online pornography business during BNOI's work hours. *Id*.

206. As a direct and proximate result of Benitez' knowing, willful, and intentional material breach of his Employment Agreement, BNOI suffered damages and continues to suffer damages.

207. BNOI retained the law firm of Messer Strickler Burnette, Ltd. to represent it in this action and obligated itself to pay its attorneys a reasonable fee for their services in this cause.

208. Pursuant to the Employment Agreement, BNOI is entitled to an award of its reasonable attorney's fees from Benitez.

***Burke's Employment Agreement***

209. As a condition of his employment, Burke agreed to and executed an Employment Agreement with BNOI. *See* Ex. C.

210. Burke's Employment Agreement is a valid, enforceable contract supported by adequate consideration which Burke voluntarily and knowingly entered into.

211. The Employment Agreement required that Burke would not engage in any business that interferes with his respective job duties to BNOI without prior written permission. *Id.*

212. The Employment Agreement also required that Burke protect BNOI's Confidential Information and Trade Secrets. *Id.*

213. The Employment Agreement further required that any Employee Developments, including but not limited to intellectual property developed by Burke during the course of his employment, belonged to BNOI. *Id.*

214. These requirements in Burke's Employment Agreement are reasonably limited to protect BNOI's legitimate business interest in protecting its Confidential Information and Trade Secrets, Employee Developments, and intellectual property.

215. Burke materially breached his Employment Agreement when he participated in the scheme to develop and operate the online pornography business without BNOI's written permission. *Id.*

216. Burke materially breached his Employment Agreement when he failed to protect BNOI's Confidential Information and Trade Secret, by utilizing BNOI's proprietary code and programs to develop and operate the online pornography business. *Id*.

217. Burke materially breached his Employment Agreement when he worked to develop and operate the online pornography business during BNOI's work hours. *Id*.

218. As a direct and proximate result of Burke's knowing, willful, and intentional material breach of his Employment Agreement, BNOI suffered damages and continues to suffer damages.

219. BNOI retained the law firm of Messer Strickler Burnette, Ltd. to represent it in this action and obligated itself to pay its attorneys a reasonable fee for their services in this cause.

220. Pursuant to the Employment Agreement, BNOI is entitled to an award of its reasonable attorney's fees from Burke.

***Wahl's Employment Agreement***

221. As a condition of his employment, Wahl agreed to and executed an Employment Agreement with BNOI. *See* Ex. D.

222. Wahl's Employment Agreement is a valid, enforceable contract supported by adequate consideration which Wahl voluntarily and knowingly entered into.

223. The Employment Agreement required that Wahl would not engage in any business that interferes with his respective job duties to BNOI without prior written permission. *Id*.

224. The Employment Agreement also required that Wahl protect BNOI's Confidential Information and Trade Secrets. *Id*.

225. The Employment Agreement further required that any Employee Developments, including but not limited to intellectual property developed by Wahl during the course of his employment, belonged to BNOI. *Id*.

226. These requirements in Wahl's Employment Agreement are reasonably limited to protect BNOI's legitimate business interest in protecting its Confidential Information and Trade Secrets, Employee Developments, and intellectual property.

227. Wahl materially breached his Employment Agreement when he participated in the scheme to develop and operate the online pornography business without BNOI's written permission. *Id*.

228. Wahl materially breached his Employment Agreement when he failed to protect BNOI's Confidential Information and Trade Secret, by utilizing BNOI's proprietary code and programs to develop and operate the online pornography business. *Id*.

229. Wahl materially breached his Employment Agreement when he worked to develop and operate the online pornography business during BNOI's work hours. *Id*.

230. As a direct and proximate result of Wahl's knowing, willful, and intentional material breach of his Employment Agreement, BNOI suffered damages and continues to suffer damages.

231. BNOI retained the law firm of Messer Strickler Burnette, Ltd. to represent it in this action and obligated itself to pay its attorneys a reasonable fee for their services in this cause.

232. Pursuant to the Employment Agreement, BNOI is entitled to an award of its reasonable attorney's fees from Wahl.

***Toro's Employment Agreement***

233. As a condition of his employment, Toro agreed to and executed an Employment Agreement with BNOI. *See* Ex. E.

234. Toro's Employment Agreement is a valid, enforceable contract supported by adequate consideration which Toro voluntarily and knowingly entered into.

235. The Employment Agreement required that Toro would not engage in any business that interferes with his respective job duties to BNOI without prior written permission. *Id*.

236. The Employment Agreement also required that Toro protect BNOI's Confidential Information and Trade Secrets. *Id*.

237. The Employment Agreement further required that any Employee Developments, including but not limited to intellectual property developed by Toro during the course of his employment, belonged to BNOI. *Id*.

238. These requirements in Toro's Employment Agreement are reasonably limited to protect BNOI's legitimate business interest in protecting its Confidential Information and Trade Secrets, Employee Developments, and intellectual property.

239. Toro materially breached his Employment Agreement when he participated in the scheme to develop and operate the online pornography business without BNOI's written permission. *Id*.

240. Toro materially breached his Employment Agreement when he failed to protect BNOI's Confidential Information and Trade Secret, by utilizing BNOI's proprietary code and programs to develop and operate the online pornography business. *Id*.

241. Toro materially breached his Employment Agreement when he worked to develop and operate the online pornography business during BNOI's work hours. *Id*.

242. As a direct and proximate result of Toro's knowing, willful, and intentional material breach of his Employment Agreement, BNOI suffered damages and continues to suffer damages.

243. BNOI retained the law firm of Messer Strickler Burnette, Ltd. to represent it in this action and obligated itself to pay its attorneys a reasonable fee for their services in this cause.

244. Pursuant to the Employment Agreement, BNOI is entitled to an award of its reasonable attorney's fees from Toro.

***Gajankush's Employment Agreement***

245. As a condition of his employment, Gajankush agreed to and executed an Employment Agreement with BNOI. *See* Ex. F.

246. Gajankush's Employment Agreement is a valid, enforceable contract supported by adequate consideration which Gajankush voluntarily and knowingly entered into.

247. The Employment Agreement required that Gajankush would not engage in any business that interferes with his respective job duties to BNOI without prior written permission. *Id*.

248. The Employment Agreement also required that Gajankush protect BNOI's Confidential Information and Trade Secrets. *Id*.

249. The Employment Agreement further required that any Employee Developments, including but not limited to intellectual property developed by Gajankush during the course of his employment, belonged to BNOI. *Id*.

250. These requirements in Gajankush's Employment Agreement are reasonably limited to protect BNOI's legitimate business interest in protecting its Confidential Information and Trade Secrets, Employee Developments, and intellectual property.

251. Gajankush materially breached his Employment Agreement when he participated in the scheme to develop and operate the online pornography business without BNOI's written permission. *Id*.

252. Gajankush materially breached his Employment Agreement when he failed to protect BNOI's Confidential Information and Trade Secret, by utilizing BNOI's proprietary code and programs to develop and operate the online pornography business. *Id*.

253. Gajankush materially breached his Employment Agreement when he worked to develop and operate the online pornography business during BNOI's work hours. *Id*.

254. As a direct and proximate result of Gajankush's knowing, willful, and intentional material breach of his Employment Agreement, BNOI suffered damages and continues to suffer damages.

255. BNOI retained the law firm of Messer Strickler Burnette, Ltd. to represent it in this action and obligated itself to pay its attorneys a reasonable fee for their services in this cause.

256. Pursuant to the Employment Agreement, BNOI is entitled to an award of its reasonable attorney's fees from Gajankush.

***C.Aloizos' Employment Agreement***

257. As a condition of his employment, C.Aloizos agreed to and executed an Employment Agreement with BNOI. *See* Ex. G.

258. C.Aloizos' Employment Agreement is a valid, enforceable contract supported by adequate consideration which C.Aloizos voluntarily and knowingly entered into.

259. The Employment Agreement required that C.Aloizos would not engage in any business that interferes with his respective job duties to BNOI without prior written permission. *Id*.

260. The Employment Agreement also required that C.Aloizos protect BNOI's Confidential Information and Trade Secrets. *Id*.

261. The Employment Agreement further required that any Employee Developments, including but not limited to intellectual property developed by C.Aloizos during the course of his employment, belonged to BNOI. *Id*.

262. These requirements in C.Aloizos' Employment Agreement are reasonably limited to protect BNOI's legitimate business interest in protecting its Confidential Information and Trade Secrets, Employee Developments, and intellectual property.

263. C.Aloizos materially breached his Employment Agreement when he participated in the scheme to develop and operate the online pornography business without BNOI's written permission. *Id*.

264. C.Aloizos materially breached his Employment Agreement when he failed to protect BNOI's Confidential Information and Trade Secret, by utilizing BNOI's proprietary code and programs to develop and operate the online pornography business. *Id*.

265. C.Aloizos materially breached his Employment Agreement when he worked to develop and operate the online pornography business during BNOI's work hours. *Id*.

266. As a direct and proximate result of C.Aloizos' knowing, willful, and intentional material breach of his Employment Agreement, BNOI suffered damages and continues to suffer damages.

267. BNOI retained the law firm of Messer Strickler Burnette, Ltd. to represent it in this action and obligated itself to pay its attorneys a reasonable fee for their services in this cause.

268. Pursuant to the Employment Agreement, BNOI is entitled to an award of its reasonable attorney's fees from C.Aloizos.

***Patil's Employment Agreement***

269. As a condition of his employment, Patil agreed to and executed an Employment Agreement with BNOI. *See* Ex. H.

270. Patil's Employment Agreement is a valid, enforceable contract supported by adequate consideration which Patil voluntarily and knowingly entered into.

271. The Employment Agreement required that Patil would not engage in any business that interferes with his respective job duties to BNOI without prior written permission. *Id*.

272. The Employment Agreement also required that Patil protect BNOI's Confidential Information and Trade Secrets. *Id*.

273. The Employment Agreement further required that any Employee Developments, including but not limited to intellectual property developed by Patil during the course of his employment, belong to BNOI. *Id*.

274. These requirements in Patil's Employment Agreement are reasonably limited to protect BNOI's legitimate business interest in protecting its Confidential Information and Trade Secrets, Employee Developments, and intellectual property.

275. Patil materially breached his Employment Agreement when he participated in the scheme to develop and operate the online pornography business without BNOI's written permission. *Id*.

276. Patil materially breached his Employment Agreement when he failed to protect BNOI's Confidential Information and Trade Secret, by utilizing BNOI's proprietary code and programs to develop and operate the online pornography business. *Id*.

277. Patil materially breached his Employment Agreement when he worked to develop and operate the online pornography business during BNOI's work hours. *Id*.

278. As a direct and proximate result of Patil's knowing, willful, and intentional material breach of his Employment Agreement, BNOI suffered damages and continues to suffer damages.

279. BNOI retained the law firm of Messer Strickler Burnette, Ltd. to represent it in this action and obligated itself to pay its attorneys a reasonable fee for their services in this cause.

280. Pursuant to the Employment Agreement, BNOI is entitled to an award of its reasonable attorney's fees from Patil.

WHEREFORE, Plaintiff, BetterNOI, LLC, demands judgment in its favor and against each of the Defendants individually for Breach of Contract, including the award of damages, interest, attorneys' fees, court costs, and for such other and further relief as this Court deems equitable.

## COUNT II
## CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

281. Plaintiff realleges and reincorporates by reference the allegations in Paragraphs 1 through 183 as though set forth fully herein.

282. S.Aloizos recruited the Defendants to develop and operate the online pornography business.

283. Together with S.Aloizos, the Defendants agreed to develop and operate the online pornography business.

284. Without BNOI's consent, the Defendants proceeded to knowingly and voluntarily utilize BNOI's Confidential Information and Trade Secret proprietary code and programs to develop and operate the online pornography business.

285. By engaging in these acts, Defendants conspired to knowingly, willfully and purposefully commit unlawful acts designed to misappropriate BNOI's Confidential Information and Trade Secrets, Employee Developments, and intellectual property, breach and interfere with

contractual obligations owed to BNOI in violation of the Defendants' contractual obligations to BNOI.

286. Defendants agreed, combined and acted with a common plan to breach the contractual and common law duties owed to BNOI by engaging in the unlawful acts described above.

287. Defendants further conspired to do so with the specific intent to injure BNOI's business.

288. Defendants' actions have been willful and outrageous and undertaken with reckless indifference to BNOI's rights.

289. As a direct and proximate result of the acts done in furtherance of the conspiracy, BNOI has been damaged, including damage in the form of expenses related to investigative and remedial actions taken to address the effects of the conspiracy. BNOI has suffered, and will continue to suffer, these injuries.

290. The Defendants are jointly and severally liable for the damages suffered by BNOI.

291. BNOI retained the law firm of Messer Strickler Burnette, Ltd. to represent it in this action and obligated itself to pay its attorneys a reasonable fee for their services in this cause.

WHEREFORE, Plaintiff, BetterNOI, LLC, demands judgment in its favor and against each of the Defendants, joint and severally, for Civil Conspiracy, including the award of damages, interest, attorneys' fees, court costs, and for such other and further relief as this Court deems equitable.

## COUNT III
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT AGAINST ALL DEFENDANTS
## (Florida Statute § 501.201 *et seq.*)

292. Plaintiff realleges and reincorporates by reference the allegations in Paragraphs 1 through 183 as though set forth fully herein.

293. BNOI is a "consumer" as defined in Florida's Deceptive Unfair Trade Practices Act, Florida Statue § 501.201 *et seq*.

294. The Defendants conduct in misappropriating and utilizing BNOI's Confidential Information and Trade Secrets, Employee Developments and trade secrets, constituted "trade of commerce" as defined in Florida's Deceptive Unfair Trade Practices Act, Florida Statue § 501.201 *et seq*.

295. In committing the acts as set forth herein, misappropriating and utilizing BNOI's Confidential Information and Trade Secrets, Employee Developments and trade secrets, without BNOI's consent and in breach of their Employment Agreements, Defendants committed unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of trade or commerce.

296. As a direct and proximate result of the Defendants' conduct, BNOI has suffered and will continue to suffer damages.

297. BNOI retained the law firm of Messer Strickler Burnette, Ltd. to represent it in this action and obligated itself to pay its attorneys a reasonable fee for their services in this cause.

298. Pursuant to Florida Statute § 501.2105, Defendants are responsible for the payment of BNOI's attorneys' fees and costs.

WHEREFORE, Plaintiff, BetterNOI, LLC, demands judgment in its favor and against each of the Defendants, joint and severally, for compensatory damages, interest, attorneys' fees, court costs, and for such other and further relief as this Court deems equitable.

## <u>COUNT IV</u>
## VIOLATION OF FLORIDA'S UNIFORM TRADE SECRETS ACT

**AGAINST ALL DEFENDANTS**
**(Florida Statute § 688.001 *et seq.)***

299. Plaintiff realleges and reincorporates by reference the allegations in Paragraphs 1 through 183 as though set forth fully herein.

300. BNOI's Confidential Information and Trade secrets as well as BNOI's proprietary code and programs constitute trade secrets as defined in Florida Statute § 688.002.

301. BNOI derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and was the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

302. These trade secrets are held in the strictest confidence and the Defendants only obtained knowledge of BNOI's trade secrets through the course of their employment with BNOI.

303. BNOI is entitled to an order enjoining the Defendants from any further use or misappropriation of its trade secrets in accordance with Florida Statute § 688.003.

304. As a direct and proximate result of the Defendants' misappropriation and use of BNOI's trade secrets, BNOI has been damaged and continues to be threatened with future damage.

305. Accordingly, BNOI is entitled to recover the actual loss caused by the Defendants' misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing the actual loss. In lieu of damages measured by any other methods, the damages cause by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

306. Here, the actions of the Defendants were willful and malicious misappropriation as contemplated by Florida Statute §§ 688.004, 688.005, entitling BNOI to punitive damages and attorneys fees and costs.

307. BNOI retained the law firm of Messer Strickler Burnette, Ltd. to represent it in this action and obligated itself to pay its attorneys a reasonable fee for their services in this cause.

WHEREFORE, BetterNOI, LLC demands judgment in its favor and against each of the Defendants, for violation of Florida's Uniform Trade Secrets Act, including the award of actual damages, punitive damages, attorneys' fees, court costs, and for an injunction to prevent the further actual and threatened misappropriation by the Defendants.

## COUNT V
## VIOLATION OF THE FEDERAL DEFEND TRADE SECRETS ACT ("DTSA"), 18 U.S.C. § 1836, *et seq*. AGAINST ALL DEFENDANTS

308. Plaintiff realleges and reincorporates by reference the allegations in Paragraphs 1 through 183 as though set forth fully herein.

309. In the course of their employment, Defendants had access to and use of Confidential Information and Trade Secrets, Employee Developments and intellectual property as set forth herein.

310. BNOI is the owner of such Confidential Information and Trade Secrets, Employee Developments and intellectual property.

311. The Confidential Information and Trade Secrets, Employee Developments and intellectual property to which the Individual Defendants had access, are related to BNOI's products or services that are used in or intended for use in interstate commerce.

312. BNOI has spent significant time and money developing its Confidential Information and Trade Secrets, Employee Developments and intellectual property.

313. BNOI's Confidential Information and Trade Secrets, Employee Developments and intellectual property are protected, kept confidential, and not publicly disclosed.

314. BNOI has, at all times, taken reasonable measures to protect its Confidential Information and Trade Secrets, Employee Developments and intellectual property, including, but not limited to, restricting electronic and physical access to such information and requiring its employees to be subject to Employee Handbook and as appropriate, to execute various agreements, including the Employment Agreements which also require confidentiality, prior to having access to such information.

315. BNOI's Confidential Information and Trade Secrets, Employee Developments and intellectual property derive independent economic value, actual or potential, from being not generally known to, and not being readily ascertained through proper means by, another person who can obtain economic value from the disclosure or use of that information.

316. Disclosure and unauthorized use of this type of information undermines BNOI's competitive position in the industry.

317. The Defendants misappropriated BNOI's Confidential Information and Trade Secrets, Employee Developments and intellectual property by utilizing BNOI's programs and codes to develop and operate the pornography business.

318. Defendants misappropriated, wrongfully possessed, used, disclosed, and/or relied upon BNOI's Confidential Information and Trade Secrets, Employee Developments and intellectual property to benefit themselves.

319. The Confidential Information and Trade Secrets, Employee Developments and intellectual property utilized by the Defendants, included, but is not limited to, are the Code and Programs as identified above.

320. BNOI is entitled to permanent injunctive relief, compensatory damages, exemplary damages, an award of reasonable attorneys' fees and/or other appropriate relief under Section 1836 of the DTSA.

WHEREFORE, BetterNOI LLC, demands judgment in its favor and against each of the Defendants, for violation of the Federal Defend of Trade Secrets Act, including the award of damages, attorney fees, injunctive relief and any and all other equitable relief.

**COUNT VI**
**BREACH OF FIDUCIARY DUTY AGAINST S. ALOIZOS**

321. Plaintiff realleges and reincorporates by reference the allegations in Paragraphs 1 through 183 as though set forth fully herein.

322. As the Chief Technology Officer of BNOI, S.Aloizos owed BNOI the fiduciary duties of the duty of loyalty, and the duty of care.

323. S.Aloizos knowingly breached his fiduciary duties when he directed the Defendants to forge BNOI's clients' signatures on sub-merchant agreements between BNOI clients, First Data Merchant Services LLC and Rent Accept LLC based on the misrepresentation to BNOI that such clients had provided BNOI with powers of attorney permitting such signatures.

324. S.Aloizos knowingly breached his fiduciary duties when he engaged in a scheme to enrich himself and his family members, by fraudulently recommending and securing from the CEO, disproportionately high salary increases for his family members who worked for BNOI to the detriment of the other BNOI employees, including but not limited to the other Defendants.

325. S.Aloizos knowingly breached his fiduciary duties when he engaged in a scheme to enrich himself at the expense of the other Defendants. Throughout 2023 S.Aloizos coerced BNOI's CEO to loan him One Hundred Eighty Six Thousand Three Hundred Thirty Four Dollars

($186,334.00) which was earmarked as compensation for the Defendants, which funds S.Aloizos used for renovations to the kitchen and pool at his personal residence.

326. S.Aloizos knowingly breached his fiduciary duties when he intentionally violated requirement imposed under the H-1B visa program applicable to the visas held by Defendants Gajankush and Patil, which, upon information and belief, put Defendants Gajankush and Patil at risk of deportation.

327. S.ALoizos knowingly breached his fiduciary duties when he solicited the Defendants, BNOI's employees, to engage in a scheme of developing and building his pornography business without BNOI's permission.

328. S.ALoizos knowingly breached his fiduciary duties when he utilized and assisted the Defendants in utilizing BNOI's Confidential Information and Trade Secrets as well as Employee Developments, to develop and build his pornography business.

329. S.ALoizos knowingly breached his fiduciary duties when he solicited BNOI's employees to work on his pornography business utilizing BNOI's computers.

330. S.ALoizos knowingly breached his fiduciary duties when he solicited BNOI's employees to work on his pornography business during BNOI's business hours.

331. As a direct and proximate result of S.Aloizos knowing breach of his fiduciary duties to BNOI, BNOI suffered damages.

WHEREFORE, BetterNOI LLC, demands judgment in its favor and against S.Aloizos, for Breach of Fiduciary Duty, including an award of damages, injunctive relief and any and all other equitable relief.

## COUNT VII
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY BY C.ALOIZOS, BENITEZ, TORO, WAHL, BURKE, GAJANKUSH, PATIL

332. Plaintiff realleges and reincorporates by reference the allegations in Paragraphs 1 through 183 and Paragraphs 321 through 331, as though set forth fully herein.

333. As set forth above S.Aloizos' owed fiduciary duties to BNOI by virtue of his position as Chief Technology Officer.

334. As set forth above S.Aloizos' actions breached his fiduciary duties owed to BNOI.

335. Defendants C.Aloizos, Benitez, Toro, Wahl, Burke, Gajankush, and Patil knew that S.Aloizos' actions breached his fiduciary duties owed to BNOI.

336. The Defendants substantially assisted S.Aloizos to breach his fiduciary duties owed to BNOI by assisting S.Aloizos in developing and building the pornography business utilizing BNOI's Code and Programs.

WHEREFORE, BetterNOI LLC, demands judgment in its favor and against C.Aloizos, Benitez, Toro, Wahl, Burke, Gajankush, and Patil, for Aiding and Abetting S.Aloizos' Breach of Fiduciary Duty, including an award of damages, injunctive relief and any and all other equitable relief.

## COUNT VIII
## BREACH OF FIDUCIARY DUTY AGAINST C.ALOIZOS, BENITEZ, TORO, WAHL, BURKE, GAJANKUSH, AND PATIL

337. Plaintiff realleges and reincorporates by reference the allegations in Paragraphs 1 through 183 as though set forth fully herein.

338. As employees of BNOI, Defendants C.Aloizos, Benitez, Toro, Wahl, Burke, Gajankush, and Patil each owed BNOI the fiduciary duty of loyalty.

339. C.Aloizos, Benitez, Toro, Wahl, Burke, Gajankush, and Patil knowingly breached their fiduciary duty when they engaged in a scheme of developing and building his pornography business without BNOI's permission, utilizing BNOI's Code and Programs.

340. C.Aloizos, Benitez, Toro, Wahl, Burke, Gajankush, and Patil knowingly breached their fiduciary duty when they utilized BNOI's Confidential Information and Trade Secrets as well as Employee Developments, to develop and build the pornography business.

341. C.Aloizos, Benitez, Toro, Wahl, Burke, Gajankush, and Patil knowingly breached their fiduciary duties when they utilized BNOI's computers to develop and operate the pornography business.

342. C.Aloizos, Benitez, Toro, Wahl, Burke, Gajankush, and Patil knowingly breached their fiduciary duty when they worked on the pornography business during BNOI's business hours.

343. As a direct and proximate result of C.Aloizos, Benitez, Toro, Wahl, Burke, Gajankush, and Patil knowing breach of their fiduciary duties to BNOI, BNOI suffered and continues to suffer damages.

WHEREFORE, BetterNOI LLC, demands judgment in its favor and against C.Aloizos, Benitez, Toro, Wahl, Burke, Gajankush, and Patil, for Breach of Fiduciary Duty, including an award of damages, injunctive relief and any and all other equitable relief.

## COUNT IX
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY BY S.ALOIZOS

344. Plaintiff realleges and reincorporates by reference the allegations in Paragraphs 1 through 183, and Paragraphs 336 through 342, as though set forth fully herein.

345. As set forth above C.Aloizos, Benitez, Toro, Wahl, Burke, Gajankush, and Patil each owed a fiduciary duty to BNOI by virtue of their positions with BNOI.

346. As set forth above C.Aloizos, Benitez, Toro, Wahl, Burke, Gajankush, and Patil's actions breached their fiduciary duty owed to BNOI.

347. As BNOI's Chief Technology Officer, S. Aloizos knew that C.Aloizos, Benitez, Toro, Wahl, Burke, Gajankush, and Patil's actions breached their fiduciary duty owed to BNOI.

348. As BNOI's Chief Technology Officer, S.Aloizos substantially assisted C.Aloizos, Benitez, Toro, Wahl, Burke, Gajankush, and Patil breach their fiduciary duty owed to BNOI by soliciting and assisting C.Aloizos, Benitez, Toro, Wahl, Burke, Gajankush, and Patil in developing and building the pornography business utilizing BNOI's Code and Programs.

WHEREFORE, BetterNOI LLC, demands judgment in its favor and against S.Aloizos, for Aiding and Abetting C.Aloizos, Benitez, Toro, Wahl, Burke, Gajankush, and Patil's Breach of Fiduciary Duty, including an award of damages, injunctive relief and any and all other equitable relief.

## COUNT X
## VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1961 *et seq.*

349. Plaintiff realleges and reincorporates by reference the allegations in Paragraphs 1 through 183 as though set forth fully herein.

350. The Defendants violated the Racketeer Influenced and Corrupt Organizations Act, codified as Title IX of the Organized Crime Control Act of 1970 ("RICO"), 18 U.S.C. §§ 1962 to 1968.

351. The Defendants online pornography business is an enterprise engaged in, and whose activities affect interstate commerce.

352. Under the leadership of S.Aloizos, the Defendants participated, either directly or indirectly of the affairs of the online pornography business.

353. The Defendants willfully and knowingly engaged in a pattern of racketeering activity that, as described above, included at least two RICO predicate offenses (continuous and repeated violations of 18 U.S.C. § 1836) over at least the last three months, demonstrating a requisite pattern of racketeering behavior, comprised of multiple predicate acts, including

misappropriation and theft of trade secrets in violate of 18 U.S.C. § 1836. This scheme was directed at BNOI.

354. The actions of the Defendants described herein, constituted a pattern of racketeering activity prohibited by RICO and amounted to a common illegal enterprise.

355. The Defendants have directly and indirectly conducted and participated in the conduct through the pattern of racketeering and activity described above, in violation of RICO.

356. As a direct and proximate result of the Defendants racketeering activities (including continuous and repeated violations of 18 U.S.C. § 1836), BNOI has suffered damages, including actual damages, treble damages, costs and attorneys' fees.

WHEREFORE, BetterNOI LLC, demands judgment in its favor and against each of the Defendants, for violation of the Racketeer Influenced and Corrupt Organizations Act, including the award of damages, attorney fees, costs, and any and all other equitable relief.

**COUNT XI**
**VIOLATION OF THE FLORIDA RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, Fla. Stat. § 895.01 *et seq.***

357. Plaintiff realleges and reincorporates by reference the allegations in Paragraphs 1 through 183 as though set forth fully herein.

358. The Defendants violated the Florida Racketeer Influenced and Corrupt Organizations Act, ("FRICO") Fla. Stat. § 895.01 *et seq.*

359. The Defendants online pornography business is an enterprise engaged in, and whose activities affect interstate commerce.

360. Under the leadership of S.Aloizos, the Defendants participated, either directly or indirectly of the affairs of the online pornography business.

361. The Defendants willfully and knowingly engaged in a pattern of racketeering activity that, as described above, included at least two FRICO predicate offenses (continuous and repeated violations of 18 U.S.C. § 1836) over at least the last three months, demonstrating a requisite pattern of racketeering behavior, comprised of multiple predicate acts, including misappropriation and theft of trade secrets in violate of 18 U.S.C. § 1836. This scheme was directed at BNOI.

362. The actions of the Defendants described herein, constituted a pattern of racketeering activity prohibited by FRICO and amounted to a common illegal enterprise.

363. The Defendants have directly and indirectly conducted and participated in the conduct through the pattern of racketeering and activity described above, in violation of FRICO.

364. As a direct and proximate result of the Defendants racketeering activities (including continuous and repeated violations of 18 U.S.C. § 1836), BNOI has suffered damages, including actual damages, treble damages, costs and attorneys' fees.

WHEREFORE, BetterNOI LLC, demands judgment in its favor and against each of the Defendants, for violation of the Florida Racketeer Influenced and Corrupt Organizations Act, including the award of damages, attorney fees, costs, and any and all other equitable relief.

**COUNT XII**
**UNJUST ENRICHMENT**

365. Plaintiff realleges and reincorporates by reference the allegations in Paragraphs 1 through 183 as though set forth fully herein.

366. While employed by BNOI and receiving compensation associated with their employment, the Defendants knowingly, willfully and purposefully committed illegal acts designed to steal and misappropriate BNOI's Confidential Information, Trade Secret, intellectual property, and Employee Developments.

367. Because of these actions, the Defendants are obligated to reimburse BNOI for all compensation paid to them during the period of their respective unlawful activity.

**COUNT XIII**
**INJUNCTION**

368. Plaintiff realleges and reincorporates by reference the allegations in Paragraphs 1 through 183 as though set forth fully herein.

369. Pursuant to Florida Statute § 688.03, any actual or threatened misappropriation of a trade secret may be enjoined.

370. BNOI suffered and continues to suffer irreparable harm due to the Defendants' actions as set forth herein.

371. The legal remedies are inadequate because the wrongs complained of are continuous in nature, as the Defendants continue to utilize BNOI's Confidential Information and Trade Secret, Employee Developments, and trade secret in furtherance of their online pornography business.

372. BNOI has a clearly ascertainable right to prevent the unauthorized use of its Confidential Information and Trade Secret, Employee Developments, and trade secret, BNOI is likely to succeed on the merits of its claims as it is clear that the Defendants have utilized BNOI's Confidential Information and Trade Secret, Employee Developments, and trade secret, for the purposes of their own personal financial gain.

373. Enforcement is feasible as the Court can determine whether the Defendants utilized BNOI's Confidential Information and Trade Secret, Employee Developments, and trade secret, to develop and operate their online pornography business.

WHEREFORE, BetterNOI, LLC, seeks injunctive relief in the form of an order prohibiting the Defendants, jointly and severally from any further use of any of BetterNOI's Confidential

Information and Trade Secret, Employee Developments, and trade secret, in furtherance of their online pornography business.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all triable issues.

Respectfully submitted,

**MESSER STRICKLER BURNETTE, LTD.**

By: *_/s/ Maureen B. Walsh_*
LAUREN M. BURNETTE, ESQUIRE
FL Bar No. 0120079
JOHN M. MAREES II, ESQUIRE
FL Bar No. 069879
MAUREEN B. WALSH, ESQUIRE
FL Bar No. 28179
1200 Riverplace Blvd.
Suite 105 #1558
Jacksonville, FL 32207
☏ (904) 650-7531
(904) 298-8350 (fax)
- lburnette@messerstrickler.com
- jmarees@messerstrickler.com
- mwalsh@messerstrickler.com

*Counsel for Plaintiff*

And

*Pro hac vice application to be submitted,*

By: *_/s/ Joseph S. Messer_*
Joseph S. Messer
Messer Strickler Burnette, Ltd.
142 W. Station St.
Barrington, IL 60010
Tel.: (312) 334-3440
Fax: (312) 334-3473
jmesser@messerstrickler.com
*Counsel for Plaintiff*

Dated: January 15, 2025